Samuel T. Adams Callaway City Attorney Apalachicola
QESTIONS:
1. May a municipality legally expend public funds to institute and prosecute an action to test the legal sufficiency of allegations contained in a recall petition brought against an individual city commissioner pursuant to s. 100.361, F.S., whether or not the subject allegations refer to acts or omissions committed in the performance of the commissioner's official duties?
2. If the answer to question 1 is in the negative, would a city commissioner whose recall petition was legally challenged with the use of public funds, and who voted to use public funds for that purpose, have a legal obligation to reimburse the municipality for the expenditures?
SUMMARY:
A municipality may not expend public funds to institute and prosecute a legal action to test the legal sufficiency of the allegations contained in a recall petition filed against one of the members of the city commission; and, when municipal funds are improperly and not in good faith expended for that purpose, any member of the governing body who voted to so expend the funds may be held personally liable for the expenditure.
AS TO QUESTION 1:
Municipal recall elections are provided for and governed by s.100.361, F. S. That statutory section provides the method by which the electors of any municipality or charter county may remove from office any member of their governing body. A petition naming the officer to be recalled and containing a statement of the grounds for recall must be signed by a specified number of electors of the municipality or charter county, the number depending upon the total number of registered electors within the jurisdiction as of the preceding municipal election. The facts stated in the petition as grounds for recall must be legally sufficient to establish a prima facie charge of either malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or conviction of a felony involving moral turpitude. It has been said that `Florida's recall statute is accusatory in nature and requires that a recall petition allegeconduct by the public official which would constitute one of the seven grounds for removal listed in section 100.361(1)(b).' (Emphasis supplied.) Bent v. Ballantyne, 368 So.2d 351 (Fla. 1979). Mere recital of one or more of the statutory grounds without an allegation of conduct constituting such prescribed grounds is insufficient. Bent, supra. Cf. Wolfson v. Work,326 So.2d 90 (2 D.C.A. Fla., 1976), holding that it is not necessary for each of the alleged grounds to be legally sufficient tprovided that at least one of the grounds is sufficient.
Your first question concerns the legality of a municipality's expending public funds to institute and prosecute an action to test the legal sufficiency of the allegations contained in a recall petition. While the truth or falsity of the statements made to support recall is not a matter into which a court will inquire, that ascertainment being the province of the electors, the legal sufficiency of the facts alleged as constituting one of the specific statutory grounds for recall is subject to judicial scrutiny. See Bent, supra, and Wolfson, supra; see also AGO 075-119 and the cases cited therein. Clearly, a municipal officer has a sufficient property right in his office to permit him in his individual capacity to challenge the sufficiency of the underlying petition. See DuBose v. Kelly, 181 So. 11 (Fla. 1938), and Gilbert v. Morrow, 277 So.2d 812 (1 D.C.A. Fla., 1973). It has been said, however, that a municipality has no interest in the outcome of a recall election and should not pay any costs associated therewith.See Williams v. City of Miami, 42 So.2d 582 (Fla. 1949); accord:
Attorney General Opinion 071-185 and Informal Opinion to Nicholas A. Caputo, February 27, 1975; cf. Markham v. State Department of Revenue, 298 So.2d 210 (1 D.C.A. Fla., 1974). This conclusion was based on the rationale that a recall election is a personal matter between the electors and the officer whose recall is being sought; consequently, no public purpose exists for which public funds may be expended. No citation is required to support the fundamental proposition that public funds may be expended only for a public purpose, but see, e.g., Markham, supra. Furthermore, in the case of municipalities, our State Constitution provides that their powers are limited to those subjects which have as their object a valid municipal purpose. Section 2(b), Art. VIII, State Const. Andsee State v. City of Miami, 379 So.2d 651 (Fla. 1980), and State v. City of Sunrise, 354 So.2d 1206 (Fla. 1979). In addition, while municipalities are granted broad home rule powers by the constitution (see s. 2, Art. VIII, State Const.), their legislative powers are restricted in the area of matters preempted to the state by general law. See s. 166.021(3)(c), F. S. In this regard I note that the Municipal Recall Law specifically provides in s. 100.361(9), F. S., that the Legislature intends that the recall procedures provided for in s. 100.361 be uniform statewide. Nowhere in that statutory section is there any provision providing for or permitting any governmental official or body to institute and prosecute legal proceedings to test the legal sufficiency of the facts alleged as grounds for recall. I therefore conclude that the expenditure of municipal funds for the purposes set forth in your first question would not constitute a valid municipal purpose.
You have advanced another justification for a municipality's expending public funds to challenge the legal sufficiency of a recall petition which is unrelated to the outcome of the election. You have hypothesized a situation is which no one chalenges the sufficiency of the petition until after the recall election has been held. You argue that, if the petition's sufficiency is successfully challenged after the election has been held and the election results are therefore invalidated, the municipality will have expended considerable funds for an election which otherwise might have been avoided by the filing of a timely legal challenge. In order to avoid such a scenario in which municipal funds are needlessly expended for an election which is later in validated, you wish to know whether the municipality itself might be justified in challenging the legal sufficiency of the recall petition prior to the holding of the election.
You have indicated in your inquiry that the city would seek declaratory and injunctive relief. Whether a court would even entertain such a suit is doubtful. In this regard it has been held that declaratory judgment procedures may not be invoked to obtain legal advice from the court. See State v. Lewis, 72 So.2d 823
(Fla. 1954). Neither will declaratory judgments be rendered to resolve speculative or hypothetical issues. See Anderson v. Dimick, 77 So.2d 867 (Fla. 1955), and Bryant v. Gray, 70 So.2d 581
(Fla. 1954). There must be a bona fide dispute between the parties as to a present justiciable issue in order to invoke the Declaratory Judgment Act. See Okaloosa Island Leaseholders Association, Inc. v. Okaloosa Island Authority, 308 So.2d 120 (1 D.C.A. Fla., 1975). Finally, it has been held that the merepossibility of injury at some indeterminate time in the future
does not supply standing under the Declaratory Judgment Act. See
Williams v. Howard, 329 So.2d 277 (Fla. 1976), and Smith v. City of Pinellas Park, 336 So.2d 1255 (2 D.C.A. Fla., 1976). As the injury you assert — that the recall election might be declared invalid after the fact and for that reason set aside — is strictly conjectural and, from a precedential perspective, highly unlikely, I would not predict judicial concurrence in any attempt to seek such a resolution.
Whether a justification such as the one you have advanced could be considered sufficient to constitute a public purpose has never been determined, to my knowledge, by a court of law. Neither am I aware of any cases in which the results of a recall election have been set aside at the insistence of a recalled public official on the grounds that the underlying petition was insufficient when such challenge was not made until after the election. In the absence of such a court determination, and in view of the extremely speculative nature of the injury hypothesized by you, I have no power to declare such a use of public funds to be for a valid public purpose; and I cannot countenance their use in such a fashion.
AS TO QUESTION 2:
Your second question is whether a city commissioner whose recall petition was successfully challenged through the use of public funds would be under any legal obligation to reimburse the city for those expenditures. The general rule with respect to the expenditure of public funds is that any official who authorizes an improper expenditure of public funds is personally liable therefor. 26 Fla. Jur. Public Officers s. 128, pp. 264-266; 67 C.J.S. Officers s. 212, pp. 693-694; and White v. Crandon,156 So. 303, 304 (Fla. 1934) (a member of a board of county commissioners will be held personally liable for money voted and paid out without authority of law when such action is equivalent to a misappropriation of public funds so paid out). When the officer acts in good faith or upon the advice of counsel, however, his liability may be excused. Any determination of good faith or legal excuse is, of course, a factual issue and cannot be determined by this office.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General